GEORGE S. CARDONA
Acting United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
JOHN J. LULEJIAN (Cal. State Bar No. 186783)
SHAWN J. NELSON (Cal. State Bar No. 185149)
Assistant United States Attorneys
Violent and Organized Crime Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-8603/5339
    Facsimile: (213) 894-3713
    E-mail:   John.Lulejian@usdoj.gov
             Shawn.Nelson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) CR No. 07-1142-VBF |
|---|---|
| Plaintiff, | ) <u>GOVERNMENT'S POSITION RE:</u> <u>PRESENTENCE REPORT AND</u> |
| v. | ) <u>SENTENCING FACTORS FOR</u> <u>DEFENDANT MICHAEL LYNN TWYMAN</u> |
| CHARLES LEROY TWYMAN, et al., | ) DATE: November 9, 2009 |
| Defendants. | ) TIME: 11:00 a.m. ) PLACE: Courtroom of the Hon. Valerie Baker Fairbank |

    Plaintiff, United States of America, through its attorney of record, the United States Attorney's Office for the Central District of California, hereby files the Government's Position re: Presentence Report and Sentencing Factors for Defendant Michael Lynn Twyman. The government's position is based upon the concurrently-filed memorandum of points and authorities, the

\\
\\

files and records of this case, the Presentence Report, and any evidence or argument presented at the hearing in this matter.

Date: <u>October 28, 2009</u>         GEORGE S. CARDONA
                                     Acting United States Attorney

                                     CHRISTINE C. EWELL
                                     Assistant United States Attorney
                                     Chief, Criminal Division


                                     */s John J. Lulejian*
                                     JOHN J. LULEJIAN
                                     SHAWN J. NELSON
                                     Assistant United States Attorneys
                                     Violent & Organized Crime Section

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

PAGE

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . ii
I    INTRODUCTION.. . . . . . . . . . . . . . . . . . . . . . . . 1
II   FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
III  FACTUAL CORRECTIONS TO PRESENTENCE REPORT. . . . . . . . . . 2
IV   SENTENCING RECOMMENDATION. . . . . . . . . . . . . . . . . . 2
     A.   Legal Standard. . . . . . . . . . . . . . . . . . . . . 2
     B.   Government's Recommendation.. . . . . . . . . . . . . . 4
          1.   Sentencing Guideline Calculation.. . . . . . . . . 5
          2.   Section 3553(a) Factors. . . . . . . . . . . . . . 6
               a.   Nature and Circumstances of the
                    Offense and History and Characteristics
                    of Defendant . . . . . . . . . . . . . . . . 6
               b.   Need to Reflect the Seriousness of the
                    Offense.. . . . . . . . . . . . . . . . . . . 8
               c.   Deterrence of Criminal Conduct .. . . . . . . 8
               d.   Need to Protect the Public . . . . . . . . . 8
               e.   Need to Provide Defendant with
                    Education.. . . . . . . . . . . . . . . . . . 8
               f.   Need to Avoid Unwarranted Disparity in
                    Sentences.. . . . . . . . . . . . . . . . . . 9
          3.   Other Factors to Consider . . . . . . . . . . . . 10
     C.   Probation Office's Recommendation.. . . . . . . . . . . 11
V    WAIVER OF APPEAL.. . . . . . . . . . . . . . . . . . . . . . 11
VI   CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . 12

**TABLE OF AUTHORITIES**

FEDERAL CASES                                                    PAGE(S)

Ellis v. United States Dist. Ct. for W.D. Wash.,
    356 F.3d 11986 (9th Cir. 2004) . . . . . . . . . . . . . . . 3

In re Morgan,
    506 F.3d 705 (9th Cir. 2007). . . . . . . . . . . . . . . . 3, 4

United States v. Bride,
    2008 WL 2782688 (W.D. Wash. Jul. 14, 2008),
    aff'd, 581 F.3d 888 (9th Cir. 2009). . . . . . . . . . . . . 4

United States v. Cieslowski,
    410 F.3d 353 (7th Cir. 2005) . . . . . . . . . . . . . . 3, 4

United States v. Garcia,
    522 F.3d 855 (9th Cir. 2008) . . . . . . . . . . . . . . 3, 4

United States v. Guerrero-Velasquez,
    434 F.3d 1193 (9th Cir. 2006). . . . . . . . . . . . . . . . 9

United States v. Hunt,
    459 F.3d 1180 (11th Cir. 2006). . . . . . . . . . . . . . . . 9

United States v. Pacheco-Navarette,
    432 F.3d 967 (9th Cir. 2005). . . . . . . . . . . . . . . . . 4

United States v. Samueli,
    575 F. Supp. 2d 1154 (C.D. Cal. 2008),
    dismissing appeal, ___ F.3d ____,
    2009 WL 3030381 (9th Cir. Sept. 24, 2009). . . . . . . . 3, 5

United States v. Smith,
    445 F.3d 1 (1st Cir. 2006). . . . . . . . . . . . . . . . . . 9

United States v. Wilson,
    350 F. Supp. 2d 910 (D. Utah 2005). . . . . . . . . . . . . . 8


FEDERAL STATUTES

18 U.S.C. § 3553(a)(6). . . . . . . . . . . . . . . . . . . . . . 9


FEDERAL RULES

Fed. R. Crim. P. 11(c)(1)(C). . . . . . . . . . . . . . . . . *passim*

Fed. R. Crim. P. 11(c)(3)(A). . . . . . . . . . . . . . . . . . . 3

Fed. R. Crim. P. Rule 32(i)(3)(A). . . . . . . . . . . . . . . . 1

**TABLE OF AUTHORITIES (Cont'd)**

UNITED STATES SENTENCING GUIDELINES                                PAGE(S)

U.S.S.G. § 5A (2009). . . . . . . . . . . . . . . . . . . . . . 6

**I**

**INTRODUCTION**

Defendant Michael Lynn Twyman ("Michael Twyman") is before the Court for sentencing after pleading guilty to counts ten and eleven of the Indictment in <u>United States v. Charles Leroy Twyman, et al.</u>, Case No. CR No. 07-1142-VBF, each of which charges Use of a Communication Facility in Committing a Felony Drug Offense, in violation of Title 21, United States Code, Section 843(b).[1]

After lengthy negotiations with Michael Twyman, Charles Leroy Twyman, and Anthony Dewawyn Twyman (collectively, "the Twyman brothers"), Michael Twyman pleaded guilty to a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). In that plea agreement, the parties agreed that the appropriate sentence for both of these cases is 96 months imprisonment.

**II**

**FACTS**[2]

On March 10, 2006, Michael Twyman communicated with his brother, Charles Leroy Twyman, over the telephone. (PSR ¶ 12.) During this telephone communication, the brothers discussed, in coded language, Michael Twyman picking up cocaine base, in the

---

[1] The statutory maximum sentence that the Court can impose for each violation of Title 21, United States Code, Section 843(b), is 4 years imprisonment, a 1-year period of supervised release, a fine of up to $250,000, and a mandatory special assessment of $100.

[2] Except as otherwise noted, pursuant to Rule 32(i)(3)(A), the government respectfully requests the Court accept the "undisputed portion[s] of the presentence report as a finding of fact."

form of crack cocaine ("crack cocaine"), that had been manufactured by Gerald Plaze Thomas ("Thomas"). (PSR ¶ 12.) Later that same day, Thomas delivered approximately 148 grams of crack cocaine to Michael Twyman. (PSR ¶ 12.)

On March 21, 2006, Michael Twyman again communicate with Charles Leroy Twyman over the telephone. (PSR ¶ 13.) During this telephone communication, the brothers discussed, in coded language, Michael Twyman delivering the crack cocaine that Thomas had previously delivered to Michael Twyman to Anthony Dewayne Twyman. (PSR ¶ 13.)

At all relevant times, Michael Twyman understood that he, Charles Leroy Twyman, Gerald Plaze Thomas, and Anthony Dewayne Twyman were conspiring to manufacture, possess with intent to distribute, and distribute crack cocaine and the telephone calls related to that conspiracy. (PSR ¶ 14.)

**III**

**FACTUAL CORRECTIONS TO PRESENTENCE REPORT**

The government does not have any factual corrections to the Presentence Report.

**IV**

**SENTENCING RECOMMENDATION**

**A.   Legal Standard**

When the government and a defendant enter into a plea agreement where the government "agree[s] that a specific sentence or sentencing range" should apply, that plea is governed by Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. If the plea agreement is governed by Rule 11(c)(1)(C), the court has three options: "the court may accept the agreement, reject it,

2

or defer a decision until the court has reviewed the presentence report." Fed. R. Crim. P. 11(c)(3)(A); see Ellis v. United States Dist. Ct. for W.D. Wash., 356 F.3d 1198, 1206 (9th Cir. 2004) (en banc). "Although the court is free to accept or reject the plea agreement, it may not do so on a piecemeal basis, and the Rule 11(c)(1)(C) stipulated sentence is binding upon the court's acceptance of the plea agreement." United States v. Samueli, 575 F. Supp. 2d 1154, 1158 (C.D. Cal. 2008) (quoting In re Morgan, 506 F.3d 705, 709 (9th Cir. 2007)), dismissing appeal, ___ F.3d ____, 2009 WL 3030381 (9th Cir. Sept. 24, 2009). Further,

> [w]hen presented with a Rule 11(c)(1)(C) plea agreement, it is not only permitted but expected that the court will take an active role in evaluating the agreement. As the district court traditionally exercises broad discretion over all aspects of criminal sentencing, whether to accept or reject a plea agreement containing a stipulated sentence is likewise left to the sound discretion of the court.

Id. (quotations and citations omitted).

In evaluating a Rule 11(c)(1)(C) plea agreement, a court's guiding principle must be "the interest of justice." Id. Thus, a court may consider a number of factors including those enumerated in Title 18, United States Code, Section 3553(a). See United States v. Garcia, 522 F.3d 855, 858 n.3 (9th Cir. 2008) (noting that district court considered Section 3553(a) factors in justifying stipulated sentence). A court also may consider the United States Sentencing Guidelines ("Sentencing Guidelines") and use them to justify its sentence. See United States v. Cieslowski, 410 F.3d 353, 364 (7th Cir. 2005) ("[T]he court can and should consult the Guidelines in deciding whether to accept

3

the plea."). Cf. Garcia, 522 F.3d at 858 n.2 ("During sentencing, the district court acknowledged that its guidelines calculations 'appear[ed] academic because [the court] was going to accept the 11(c)(1)(C) plea agreement.'"). However, while there is a nexus between the Sentencing Guidelines and the plea, see United States v. Bride, 2008 WL 2782688, *2 (W.D. Wash. Jul. 14, 2008), aff'd, 581 F.3d 888 (9th Cir. 2009), "[a] sentence imposed under a Rule 11(c)(1)(C) plea arises directly from the agreement itself, not from the Guidelines. As Booker is concerned with sentencing arising under the Guidelines, it is inapplicable in this situation." Cieslowski, 410 F.3d at 364. In other words, Rule 11(c)(1)(C) plea agreements are not based on the Sentencing Guidelines and need not comport with them. See United States v. Pacheco-Navarette, 432 F.3d 967, 971 (9th Cir. 2005).

**B.     Government's Recommendation**

The plea agreement before the Court is the result of a substantial investment of time and effort by the government. The government repeatedly met with counsel for the Twyman brothers and negotiated plea agreements that held each brother accountable for his criminal conduct and were fair and just. When it prepared the plea agreements, the government first determined the applicable Sentencing Guidelines ranges and analyzed the Section 3553(a) factors, knowing that neither were controlling. The government then conducted "an individualized analysis of the specific facts presented by the case . . . ." Morgan, 506 F.3d at 711 n.3. After completing these analyses and discussing the cases with defense counsel, the government prepared individual

plea agreements and presented them to the Twyman brothers.

Based on its analysis of the facts of this specific case, the government believes that Michael Twyman's plea agreement is "in the interest of justice" and "complies with and advances the purpose of criminal sentencing as expressed by Congress." Samueli, 575 F. Supp. 2d at 1158-59.

**1.  Sentencing Guideline Calculation**

The government concurs with the offense level calculation in the PSR, which calculates a total offense level of 27.  (PSR ¶¶ 25-34.)  The government also concurs with the Probation Office's conclusion that a role adjustment is not appropriate.  (PSR ¶ 26.)  By participating in a conspiracy to traffic crack cocaine, Michael Twyman played an integral role that forecloses any assertion that he had a minor or mitigating role.[3]  However, because Michael Twyman's conduct did not rise to the level of an organizer, leader, manager, or supervisor of others in the offense, the government submits that an upward role adjustment is not appropriate.

The government concurs with the criminal history calculation provided in the PSR, which places Anthony Twyman in criminal history category V.  (PSR ¶¶ 37-59.)

---

[3] In his sentencing brief, Michael Twyman suggests that if he was convicted of the conspiracy charge, he would be entitled to a 4-level downward adjustment because he was a minimal participant.  Although it is academic, the government would object to this downward adjustment.  Michael Twyman played an active role in the drug-trafficking activities of his brother. In his plea agreement, Michael Twyman acknowledged that he received approximately 148 grams of crack cocaine from Thomas on March 10, 2006.  (Plea Agreement, at ¶ 9.)  Handling crack cocaine and then freely discussing the drug with his brother hardly is minimal or minor participation.  Accordingly, a downward adjustment for a mitigating role would not be appropriate.

5

Based on an offense level of 27 and criminal history category of V, Michael Twyman's advisory Sentencing Guidelines range is 120 to 150 months imprisonment. See U.S.S.G. § 5A (2009). However, because the statutory maximum for the crimes of conviction are 4 years, the appropriate sentence under the Sentencing Guidelines is 96 months.

**2.   Section 3553(a) Factors**

**a.   Nature and Circumstances of the Offense and History and Characteristics of Defendant**

As detailed above and in the PSR, Michael Twyman was involved in the distribution of approximately 148 grams of crack cocaine. By doing so, Michael Twyman participated in a conspiracy that trafficking in one of the most dangerous drugs available today.

As described in the PSR, Michael Twyman has had interactions with law enforcement since he was 13 years old. Those interactions have resulted in the following adult felony convictions:[4]

(1)   1982 California state felony conviction for Burglary, Second Degree, for which he received 36 months probation with 180 days in county jail (PSR ¶ 37);

(2)   1985 California state felony conviction for Grand Theft, for which he received 36 months probation with 15 days in county jail (PSR ¶ 38);[5]

---

[4]   In addition to these felony convictions, the Court should consider his other convictions and criminal conduct to determine whether to accept the Rule 11(c)(1)(C) plea agreement.

[5]   On October 8, 1987, the Los Angeles Superior Court reduced this charge to a misdemeanor and set aside and dismissed the conviction pursuant to Section 1203.4 of the California Penal

6

(3) 1989 California state felony conviction for Possession of a Firearm by Felon or Addict, for which he received 36 months probation with 90 days in jail (PSR ¶ 39);

(4) 1991 California state felony conviction for Possession of a Controlled Substance for Sale, for which he received 2 years in prison (PSR ¶ 40);

(5) 1994 California state felony conviction for Possession of a Controlled Substance for Sale, for which he received a sentence of 2 years in prison (PSR ¶¶ 41-42);[6]

(6) 2000 California state felony conviction for Possession of a Firearm by Felon or Addict, for which he received 16 months in prison (PSR ¶¶ 46-47); and

(7) 2003 California state conviction for Selling/Transporting of a Controlled Substance, for which he received 4 years in prison (PSR ¶¶ 48-50).[7]

What is troubling about Michael Twyman's criminal history is that he has not learned from his mistakes. Even though he has been convicted of drug-trafficking crimes three times, he continues to traffic in dangerous drugs. The low state sentences do not appear to have any impact on Michael Twyman.

Given the above convictions and almost 35 years of interactions with law enforcement enumerated in the PSR, a

---

Code. (PSR ¶ 38.)

[6] This conviction is a controlled substance offense for purposes of determining career offender status. See U.S.S.G. § 4B1.2(b) (2009). (PSR ¶ 43.)

[7] This conviction is a controlled substance offense for purposes of determining career offender status. See U.S.S.G. § 4B1.2(b) (2009). However, the Probation Office did not consider this conviction because it was unable to obtain Michael Twyman's plea colloquy. (PSR ¶ 50.)

sentence of 96 months imprisonment is appropriate.  A 96-month sentence also reflects the nature and circumstances of the offense and the history and characteristics of Michael Twyman.

### b.  **Need to Reflect the Seriousness of the Offense**

Participating in trafficking of approximately 148 grams of crack cocaine is a serious offense.  Thus, a sentence of 96 months imprisonment reflects the seriousness of the offense.

### c.  **Deterrence of Criminal Conduct**

As detailed above and in the PSR, Michael Twyman has been convicted of seven felonies, but has served little time in jail or prison.  Even lengthier sentences of four years in prison have not deterred his continued criminal conduct.  The government hopes that a sentence of 96 months will adequately deter Michael Twyman and others from future criminal conduct.

### d.  **Need to Protect the Public**

The public needs to be protected from convicted felons, like Michael Twyman, who traffic in crack cocaine.  A sentence of 96 months imprisonment will protect the public and deter Michael Twyman from future criminal conduct.

### e.  **Need to Provide Defendant with Education**

The need to provide a defendant with education and vocational skills, while important in most contexts, must be placed in a subordinate position to the important considerations of deterrence, protection of the public and the need for the sentence to reflect the seriousness of the offense.  See United States v. Wilson, 350 F. Supp. 2d 910, 921-22 (D. Utah 2005) (noting that legislative history of Sentencing Reform Act demonstrates that Congress intended to place rehabilitation as

8

secondary consideration where serious crimes involved). Michael Twyman will have access to many programs in the prison system to which he can avail himself. Neither the presence nor absence of any further educational programs should weigh heavily in this Court's sentencing determination.

### f. Need to Avoid Unwarranted Disparity in Sentences

Finally, a sentence in accordance with the Sentencing Guidelines also properly accounts for "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Numerous courts have recognized that the guidelines range serves as a bulwark against sentencing disparity. See United States v. Guerrero-Velasquez, 434 F.3d 1193, 1195 n.1 (9th Cir. 2006) (recognizing that guidelines "help to maintain uniformity in sentencing throughout the country"); United States v. Hunt, 459 F.3d 1180, 1184 (11th Cir. 2006) ("The Guidelines . . . are an indispensable tool in helping courts achieve Congress's mandate to consider 'the need to avoid unwarranted sentence disparities' among similarly situated defendants.") (quoting 18 U.S.C. § 3553(a)(6)); United States v. Smith, 445 F.3d 1, 7 (1st Cir. 2006) (noting that "the guideline range . . . is the principal means of complying with" the goal of avoiding unwarranted sentencing disparity).

In this case, a sentence of 96 months of imprisonment is fair and reasonable. As set forth above, the sentence that was negotiated at arms-length by the parties. Based on his role in trafficking drugs, the government agreed to let Michael Twyman plead to two counts of Use of a Communication Facility in

9

Committing a Felony Drug Offense, rather than require that he plead to the conspiracy charge. In fact, the government allowed three other similarly situated defendants (Anthony Dewayne Twyman, Gerald Plaze Thomas, and Anthony Quin Wheeler) to plead to counts of Use of a Communication Facility in Committing a Felony Drug Offense.[8] This ensures that there will be no disparity between Michael Twyman's sentence and that of any similarly situated defendant, with respect to the drug-related charges.

### 3. Other Factors to Consider

A 96-month sentence is the most the Court can impose for Michael Twyman. The government believes this sentence is appropriate for the following two reasons.

First, the plea agreement allows Michael Twyman to plead guilty to drug charges that do not carry mandatory minimum sentences. Count 1 of the Indictment (Case No. CR 07-1049-VBF) alleges a conspiracy to manufacture, possess with intent to distribute, and to distribute approximately 262 grams of cocaine base. This charge carries a 10-year mandatory term of

---

[8] The Court has sentenced two of these defendants at or near the top of the applicable Sentencing Guidelines range. Anthony Quin Wheeler pleaded guilty to one count of Use of a Communication Facility in Committing a Felony Drug Offense. On May 1, 2009, this Court sentenced him to a 42-month term of imprisonment. Gerald Plaze Thomas pleaded guilty to two counts of Use of a Communication Facility in Committing a Felony Drug Offense. On February 18, 2009, this Court sentenced him to a 96-month term of imprisonment.

Anthony Dewayne Twyman has pleaded guilty to two counts of Use of a Communication Facility in Committing a Felony Drug Offense and one count of Possession of a Firearm by a Felon, pursuant to a binding Rule 11(c)(1)(C) plea agreement. If the Court accepts his plea agreement, he will receive a 156-month sentence (96 months for the telephone counts and 60 months for firearms count).

10

1 imprisonment.  However, because Michael Twyman has three prior
2 felony drug convictions, he would have faced either a 20-year or
3 mandatory life sentence if the government filed one or more of
4 the Section 851 enhancements.  When Michael Twyman's potential
5 20-year or life sentences is compared to the 96-month sentence in
6 the plea agreement, there is no question that the negotiated
7 sentence is reasonable.

8   Second, the government crafted a sentence for Michael Twyman
9 that was consistent with the sentences that his brothers would
10 receive.  Through negotiations with counsel, the government
11 determined that Michael Twyman's conduct was less egregious than
12 either of his brothers.  Accordingly, his sentence is less the
13 sentences his two brothers may expect to receive.

**C.  Probation Office's Recommendation**

15   In its recommendation letter, the Probation Office
16 recommends a 96-month sentence:  "This term consists of 48 months
17 on each of counts ten and eleven . . . all such terms to run
18 consecutively . . . ."  (Letter of Mairi Cervantes to Court,
19 dated 11/9/09 (Docket No. 180), at 1.)  The government agrees
20 with the Probation Office's recommendation and asks that the
21 Court accept the plea agreement and follow the recommendations of
22 the Probation Office and the parties.

**V**

**WAIVER OF APPEAL**

25   In his plea agreement, Michael Twyman waived his right to
26 appeal this sentence, if the sentence is within the statutory
27 maximum and is constitutional, and the Court imposes the sentence
28 agreed to by the parties.  (Plea Agreement ¶ 20.)  Accordingly,

11

if the Court chooses to advise Michael Twyman of his limited appellate rights, the government respectfully requests that the Court note on the record that Michael Twyman has waived most of his appellate rights.

## VI
## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court accept the plea agreement sentence Michael Lynn Twyman to a term of imprisonment of 96 months, a 1-year term of supervised release, no fine, and a $200 special assessment.

Dated: <u>October 28, 2009</u>   Respectfully submitted,

GEORGE S. CARDONA
Acting United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

<u>*/s John J. Lulejian*           </u>
JOHN J. LULEJIAN
SHAWN J. NELSON
Assistant United States Attorney
Violent & Organized Crime Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

12

# CERTIFICATE OF SERVICE

I, **JOHN J. LULEJIAN**, declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California and am a member of the Bar of the United States District Court for the Central District of California;

That on October 28, 2009, I served a copy of:

**GOVERNMENT'S POSITION RE: PRESENTENCE REPORT AND SENTENCING FACTORS FOR DEFENDANT MICHAEL LYNN TWYMAN**

service was:

[X] Placed in a closed envelope, for collection and interoffice delivery addressed as follows:

[ ] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:

[ ] By hand delivery addressed as follows:

[ ] By facsimile as follows:

[ ] By messenger as follows:

[ ] By federal express as follows:

**USPO MAIRI CERVANTES**
**U.S. Probation Office**
**600 U.S. Courthouse**
**312 N. Spring Street**
**Los Angeles, CA 90012**

This Certificate is executed on October 28, 2008, at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct.

*/s John J. Lulejian*
John J. Lulejian
Assistant United States Attorney